UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CRAIG S. BOURNE | ) | |
| | ) | |
| v. | ) | NO. 2:04-CV-396 |
| | ) | |
| HOWARD CARLTON, Warden | ) | |

## MEMORANDUM OPINION

I. **Introduction**

In 1998, Craig S. Bourne was convicted by a criminal court jury in Sullivan County, Tennessee for especially aggravated kidnaping, attempted second-degree murder, and aggravated burglary and is now is serving an effective sentence of thirty-two years in a state prison. He has filed this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under those convictions—all of which arose out of his attack on his ex-girlfriend.

As grounds for relief, the petitioner claims : 1) that he was subjected to double jeopardy and that his attorney gave him ineffective assistance by failing to object to this constitutional violation, and 2) and that his sentence is excessive. The respondent has filed an answer, suggesting that the petition is time-barred and, alternatively, that, under the standards of review in 28 U.S.C. § 2254, the petitioner is not entitled to any relief from the state court decision rejecting his claims on the

merits. The Court agrees with the respondent that the petition is untimely and will dismiss this case on that basis.

II. **Timeliness Issue**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") contains a one-year statute of limitations governing the filing of an application for a federal writ of habeas corpus. *See* 28 U.S.C. § 2244. The statute begins to run when one of four circumstances occurs: the conclusion of direct review; upon the removal of an impediment which prevented a petitioner from filing a habeas corpus petition; when a petition alleges a constitutional right, newly recognized by the Supreme Court and made retroactive on collateral review; or when a claim depends upon factual predicates which could not have been discovered earlier through the exercise of due diligence. *Id.* The time is tolled, however, during the pendency of a properly filed application for state post-conviction relief. *Id.*

Here, the first circumstance is the relevant one. On direct review, the Tennessee Supreme Court denied the petitioner's application for permission to appeal on April 24, 2000. (Addendum # 2, Doc. 3). Ninety-one days later, on Monday, July 24, 2000,[1] the petitioner's opportunity to file a petition for a writ of certiorari in the

---

[1] Though such a petition must be filed within ninety days, *see* S. Ct. R. 13, in this case the ninetieth day fell on a Sunday and, under Fed. R. Civ. P. 6(a), the petitioner had an
2

United States Supreme Court ended. At this point, the petitioner's conviction became final for purposes of § 2244(d)(1)(A), *see Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir.2000), and the time period for filing his § 2254 petition would end one year afterward. Therefore, because the 1-year statute of limitations in § 2244(d)(2) expired on July 24, 2001, and because this petition was filed on October 28, 2004, (or, on October 27, 2004, under the prison mailbox rule in *Houston v. Lack*, 487 U.S. 266 (1987) ( a pleading is "filed" by a *pro se* prisoner when it is given to a prison official for mailing)), it is time-barred.

As noted, however, the limitations statute is tolled while a properly filed state post-conviction is pending. *See* 28 U.S.C. § 2244(d)(2). The petitioner filed an application for state post-conviction relief in the Sullivan County Criminal Court on March 6, 2002, (Addendum # 4), almost eight months after the lapse of AEDPA's statute of limitations, as well as the applicable state limitations statute.[2] The filing of the post-conviction application could not toll AEDPA's one-year time period, since there was no time left to toll when the petition was filed. *See Smith v. Stegall*, 141 F. Supp. 2d 779, 782-83 (E.D.Mich. 2001). This is so even though the state court suspended Tennessee's post-conviction statute of limitations and allowed the out-of-

---

extra day to file the petition.

[2] Tennessee, likewise, has a one-year statute of limitations within which to file a post-conviction petition. *See* Tenn. Code Ann. § 40-30-102(a).

3

time application to proceed.[3] *See, e.g., Curtiss v. Mount Pleasant Correctional Facility*, 338 F.3d 851, 853-55 (8th Cir.2003) (where AEDPA's one-year statute of limitations has passed, later filing of post conviction petition in state court does not toll federal statute, even if petition was timely under state law). Therefore, the petitioner is not entitled to statutory tolling under § 2244(d)(2).

The one-year statute of limitations in AEDPA, however, is not jurisdictional and is subject to equitable tolling. *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001). While the petitioner has not asserted a claim for equitable tolling, given the circumstances surrounding the timeliness issue, the Court will discuss *sua sponte* whether this doctrine should apply in this case.

Equitable tolling rarely applies, *King v. Bell*, 378 F.3d 550, 553 (6th Cir.2004), and typically, "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."

---

[3] According to the affidavit of a deputy appellate court clerk, the petitioner was not mailed a copy of the state supreme court's order, denying his application for permission to appeal, until November of 2001. After receiving notice, the petitioner requested that the state supreme court vacate and reinstate its order so that the post-conviction statute of limitations, which had already expired, would begin to run again. [Addendum 3, Judge R. Jerry Beck's Order of Mar. 20, 2002]. The state's highest court rejected the petitioner's request and held to its earlier order, but advised him that he had raised issues of fact more appropriately addressed by the trial court. [*Id.*]. Apparently acting on this advice, the petitioner then filed a belated petition for post-conviction relief in the trial court, which found, after an evidentiary hearing, that, because the clerical error had resulted in a violation of due process, the post-conviction limitations statute was tolled. [*Id.*].

4

*Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003). In determining whether to equitably toll AEDPA's statute of limitations, the Court employs a five-factor test, which includes: (1) the petitioner's lack of notice of the filing requirement; (2) his lack of constructive knowledge of the filing requirement; (3) his diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Id.* at 108. This list of factors is not necessarily all-encompassing, and not all factors are relevant in every case. *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir.2003). The petitioner bears the burden of showing that he is entitled to equitable tolling. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003), and the decision as to whether to equitably toll the statute is to be made on a case-by-case basis. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

Here, the petitioner does not contend, and there is nothing in the pleadings to suggest, that he lacked actual or constructive knowledge of the filing requirement. Therefore, factors one and two weigh against the petitioner.

The diligence factor relates not only to the filing of the federal habeas application, but also to the period the petitioner is exhausting his state court remedies. The time frame at issue here is the exhaustion-of-state-remedies period, specifically from April 20, 2000—the date the state supreme court issued its order denying the

5

petitioner's application for permission to appeal—to November 26, 2001—the date the petitioner received notice of the order. *See Miller v. Collins*, 305 F.3d 491, 495 (6th Cir.2002)

Equitable tolling generally is not available "where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1991). The Court's analysis as to whether the petitioner exercised due diligence is informed by the Sixth Circuit's decision in *Miller v. Collins, supra*.

In *Miller*, a habeas petitioner sought the benefit of equitable tolling because of a six-month delay in his receipt of notice of the state appellate court's resolution of his case. Miller had shown that he had not received timely notice and that he had no knowledge of the state court decision. The record also demonstrated that, when no order was forthcoming, he had filed a motion in the state court inquiring about the status of his case. Miller had not "passively await[ed] decision" and had "acted reasonably in filing his motion to proceed to judgment approximately nine months after his Rule 26(B) filing." *Id.* at 496. The Sixth Circuit found that Miller had diligently sought to protect his rights by filing the motion attempting to find out if the state court had issued its ruling. The circuit court ultimately concluded that equity required tolling of the statute.

Here, as in *Miller*, the petitioner has demonstrated that he did not receive timely notice and did not know about the state court's disposition of his case. However, the state court record shows that the petitioner filed his application for permission to appeal on December 13, 1999 [Addendum # 2, Doc. 4, Notice of Appeal], and there is nothing in the state court record—or in the petitioner's habeas pleadings—to indicate that he made any inquiry as to the status of his application from the date he filed his application until the date he received notice of its dismissal. Though some twenty-three months had passed since the filing date and though the petitioner had received no notice as to the disposition of his case, he appears to have "passively awaited" the decision and to have made no attempt to stay informed as to the status of his application. *See Alaska Limestone Corp. v. Hodel*, 799 F.2d 1409, 1412 (9th Cir. 1986) ("A party has an independent duty to keep informed [as to his status of his case.]"). The petitioner did not act reasonably in this respect and, thus, has not demonstrated due diligence in protecting his rights. *See, e.g.*, *Plowden v. Romine*, 78 F.Supp.2d 115, 116-20 (E.D.N.Y.1999) (no equitable tolling where petitioner did not ask appellate court or attorney about status of leave to appeal for 17 months).

There is nothing in the state court record or the petitioner's habeas pleadings to indicate that he was ignorant of the legal requirement for filing his claim.

Thus, factor five does not apply, and the Court need not determine prejudice to the respondent since this factor only applies where one factor which might justify tolling has already been identified. *Vroman*, 346 F.3d at 605. Equitable tolling of the limitations period, therefore, is not available to the petitioner and his habeas corpus petition is untimely under 28 U.S.C. § 2244(d)(1). However, even if equitable tolling were warranted, the petitioner would not be entitled to relief.

III. **Adjudicated Claims**

Under the review standards set forth in 28 U.S.C. § 2254(d), a district court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. This standard applies to the first two claims raised in the habeas petition.

*Double Jeopardy and ineffective assistance of counsel*.

These claims are addressed together because they are intertwined. In connection with these claims, the petitioner makes the following contentions.

8

The petitioner entered a guilty plea pursuant to the procedure articulated in *North Carolina v. Alford*, 400 U.S. 25 (1970) (defendant may pled guilty, while maintaining innocence), which the trial court accepted. After accepting the plea, the trial court continued the plea hearing so that the prosecution could produce the victim as a witness at the hearing. When the hearing resumed the next day, the prosecution announced that the victim did not want to attend the hearing and that it was withdrawing the plea offer. Though the trial court denied that it had accepted the plea at the initial hearing, the transcript shows otherwise. While his attorney objected to this course of events, he failed to do so on double jeopardy grounds. It is the petitioner's theory and argument that forcing him to trial, after the plea had been accepted and the plea process was substantially complete, violated his protections against being subjected to double jeopardy and that his counsel's failure to advance this argument at trial or on appeal constituted ineffective assistance of counsel.

The Tennessee Court of Criminal Appeals reviewed his allegations, stating:

> We note that in the appeal of his convictions, the petitioner claimed the state breeched a contract by withdrawing the plea offer upon the trial court's rejection of the offer. The trial court rejected the plea agreement after the petitioner told the court at the plea hearing that his trial attorney should have interviewed the victim. This court ruled against the petitioner, concluding that the trial court was within its discretion in rejecting the petitioner's plea. *See Stephen Craig Bourne,* slip op. at 6-9. The court also held that an offer by the state is revocable until it is

accepted by the trial court. *Id.,* slip op. at 8; *see also State v. Williams,* 851 S.W.2d 828, 830-32 (Tenn.Crim.App.1992). In *Bell v. State,* 220 Tenn. 685, 423 S.W.2d 482 (1968), our supreme court concluded that "[t]he essential element of a valid plea of double jeopardy is that the record should disclose that the defendant was lawfully convicted or acquitted of the offense for which he was indicted and called upon to answer." In *State v. Sluder,* 493 S.W.2d 467, 470 (Tenn.1973) (quoting *Holt v. State,* 160 Tenn. 366, 371, 24 S.W.2d 886, 887 (1929)), the court stated:

"The [double jeopardy] rule is designed to protect the individual, obnoxious to the government, from successive harassing prosecutions for a single offense...." [T]he entry of a plea of guilty in and of itself is not a bar to a subsequent prosecution for the same or higher offense without some judicial action upon the plea in a judicial sense.

In the present case, there were no successive prosecutions and the defendant was not "lawfully convicted" upon his attempted plea. Jeopardy did not attach at the attempted plea hearing and, therefore, the petitioner's attorneys were not ineffective for failing to raise this issue at trial or on appeal.

*Bourne v. State*, No. E2003-00462-CCA-R3-PC, 2004 WL 533938, *4-*5 (Tenn.Crim.App. Mar. 18, 2004), *perm. to app. denied* (Tenn. Sept. 7, 2004).

When the double jeopardy claim was offered on direct review, the state court referred to the transcript of the guilty plea hearing in determining that the trial court had not accepted the petitioner's *Alford* plea. This is a finding of fact which is entitled to a presumption of correctness, unless the petitioner offers clear and convincing proof to the contrary. The petitioner challenges this finding by alleging that the record contravenes this finding because the transcript shows that his plea was orally accepted.

10

Though the petitioner has not directed the Court to that part of the transcript which shows that the state court accepted his pleas, an examination of the transcript reflects that, at a certain point in the plea hearing, the trial court stated:

> I think that this would meet the standards as set out in United States Supreme Court of State – *North Carolina v. Alford*, and <u>I'm going to accept the *Alford* plea or best interest plea on the record that's been established</u>. And the Court finds that a reasonable trier of fact could find the Defendant guilty beyond a reasonable doubt to the offenses he's pleading guilty to. [Addendum No. 1, Part 2, Plea Hr'g Tr. at 20.]

The Court infers that the petitioner is resting his objection to the factual finding on the trial court's underlined statement. However, this excerpted portion of the transcript cannot be viewed in isolation. The trial court made this statement only after it 1) explained to the petitioner that an *Alford* plea requires both substantial evidence of guilt and a high likelihood of conviction on that evidence; 2) asked the petitioner whether he believed that it was in his best interest to plead guilty and whether he wanted to do so; and 3) received affirmative answers to both questions. Therefore, when the underlined portion of the statement is viewed in context, the only common sense reading of the statement is that the trial court was not expressing its acceptance of the guilty pleas in and of themselves, but instead was stating its opinion that the factual basis offered to support the pleas was adequate to satisfy the demands of *Alford*.

11

What happened next provides overwhelming support for the state court's factual finding. The trial court did not pronounce a sentence, but instead, continued to engage in questioning the petitioner, asking him whether he believed that his attorney should have done more to prepare for the case. The petitioner replied that he thought that counsel should have contacted the victim. After discussing the matter with his attorney during a brief recess, the petitioner held to his prior reservation about his counsel's performance and raised an additional issue. (He said that he also had a "conflicting interest on the statement that the DA read," presumably, referring to the prosecutor's statement of the factual basis underlying the plea, which she said had been derived from her interview with the victim.) Thereafter, in order to resolve the *Strickland* issue, the trial court continued the hearing.

The next day, when the hearing resumed, the State withdrew its offer of a plea agreement, over the protestation of the petitioner's counsel. The trial court then set the case for trial, stating that, due to the *Strickland* problem, it had "not accept[ed] the plea" nor "sign[ed] the order accepting the guilty plea." [*Id*. at 42].

On these facts, the Tennessee Court of Criminal Appeals found that the trial court had not accepted the guilty pleas tendered by the petitioner. Because the petitioner has not rebutted the finding by clear and convincing evidence–indeed the

12

plea hearing transcript completely supports the state court's finding—this Court will presume the finding to be correct.

The Double Jeopardy Clause of the Fifth Amendment "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishment for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). When a petitioner asserts a double jeopardy claim, it is incumbent on a court to determine the time that jeopardy attaches, because this determination serves as the lynchpin of double jeopardy jurisprudence. *Crist v. Bretz*, 437 U.S. 28, 38 (1978). Though the Supreme Court has decided at what point a defendant is placed in jeopardy when there is a trial (either to a judge or a jury), *see id.* at 37 n.15, 38, its only pronouncement as to the time jeopardy attaches in the context of a guilty plea was in *Ricketts v. Adamson*, 483 U.S. 1 (1987). There, it said: "We may assume that jeopardy attached at least when respondent was sentenced in December 1978, on his plea of guilty to second-degree murder." *Id.*, at 8.[4]

---

[4] Though the Supreme Court has not yet decided this exact issue, other courts, including this circuit, have held that where a guilty plea is not properly accepted, jeopardy does not attach. *See United States v. Patterson*, 381 F.3d 859, 863 (9th Cir. 2004) ("We conclude that jeopardy attached when the court accepted [defendant's] plea."); *United States v. Bearden*, 274 F.3d 1031, 1037-38 (6th Cir.2001) (holding that jeopardy attaches "only when the district court accepts the defendant's guilty or nolo contendere plea"); *United States v. Aliotta*, 199 F.3d 78, 83 (2d Cir.1999) (stating that, "[a]s a general rule, jeopardy attaches

13

The seminal case for evaluating an ineffectiveness claim is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court established a two-prong test for judging ineffectiveness claims. It held that, to establish ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Id.* at 693.

Because "an accused must suffer jeopardy before he can suffer double jeopardy," *Serfass v. United States*, 420 U.S. 377, 393 (1975), and because the Court must deem correct the state court's factual finding that the trial court did not accept the petitioner's guilty pleas, the state court's decisions that jeopardy did not attach because the pleas were not accepted and (by implication) that the petitioner's double jeopardy rights were not violated will not be disturbed. This is so because the

---

in a criminal case at the time the district court accepts the defendant's guilty plea"); *see also Riadon v. United States*, 274 F.2d 304, 306 (6th Cir.1960) ("[A] plea of guilty puts the accused in jeopardy, and even though the plea be withdrawn, or its acceptance refused by the trial judge, so long as it is permitted to stand, there is jeopardy."). And some courts have held that, even if a plea is accepted, jeopardy arises only with the entry of the judgment. *See, e.g., United States v. Santiago Soto*, 825 F.2d 616 (1st Cir.1997) (no double jeopardy violation because "the mere acceptance of a guilty plea does not carry the same expectation of finality and tranquility that comes with a jury's verdict or with an entry of judgment and sentence").

14

petitioner has not pointed to any controlling legal rule in a Supreme Court case to demonstrate that the state court's rejection of the plea-acceptance and double-jeopardy issues is contrary to or an unreasonable application of the relevant federal law. *See Vieux v. Pepe*, 184 F.3d 59, 63 (1st Cir.1999) ("If no Supreme Court precedent is dispositive of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.'").

Likewise, given that no prejudice ensues from an attorney's failure to raise a meritless claim, *see Greer v. Mitchell*, 264 F.3d 663, 676 (2001); *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir.1986), the state court's resolution of the ineffective-assistance claim was neither contrary to or an unreasonable application of *Strickland*.

IV. **Non-Cognizable Claim**

1. *Habeas Jurisdiction*.

"A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution." *Smith v. Phillips*, 455 U.S. 209, 221 (1982). Unless there has been a constitutional violation in the state court, a federal court has no authority to issue a writ. *Id.*

2. *Excessive Sentencing*.

In his last claim, the petitioner alleges that the state courts did not adhere to state law in sentencing him to thirty-two years in prison. Though the petitioner has labeled this claim as a challenge to an unconstitutionally excessive sentence, and though he has cited to *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and various other federal cases, his assertion that state law was misinterpreted or misapplied concerns purely an issue of state law. As such, it is not cognizable in these habeas corpus proceedings, *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988), unless the alleged errors simultaneously deny fundamental fairness and, therefore, violate the petitioner's right to due process. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). The errors alleged in this claim do not rise to a constitutional level and, hence, the Court lacks jurisdiction to review the claim. *See* 28 U.S.C.§ 2254(a) (habeas corpus relief is appropriate only for constitutional violations); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").

V. **Conclusion**

This petition is untimely under 28 U.S.C. § 2244(d)(2); equitable tolling does not apply; and, alternatively, the petitioner is entitled to no relief with respect to

his claims. Finally, the Court must decide whether to issue a certificate of appealability (COA). The petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural ruling or its assessment of his constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473 (2000). The Court has found that the petitioner failed to exercise due diligence by monitoring the status of his appeal in the state courts and that he did not qualify for equitable tolling under the *Dunlap* factors. In the alternative, the Court has found, after an examination of the record and the relevant governing law in Supreme Court cases, that the petitioner's claims lacked merit or were non-cognizable in federal habeas proceedings.

While the Court believes that jurists of reason might question whether equitable tolling saves this otherwise untimely petition—given that AEDPA's statute had already lapsed with respect to the petitioner before he received the notice of the state supreme court's disposition of his appeal—the same thing cannot be said of the Court's alternative ruling. With respect to this ruling, the Court finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Therefore, because "ordinarily, unless a certificate [of appealability] encompasses all of the grounds for a district court's ruling on an issue, an appeal that challenges only some of the district court's grounds will be moot," *Kaminski v. United States*, 339 F.3d 84, 85 n. 1 (2d Cir.2003), and because issuance of a COA on the timeliness ground alone would not afford the petitioner any relief, *Green v. Mazzucca*, 377 F.3d 182, 183 (2nd Cir. 2004), the Court will **DENY** issuance of a COA.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.

**ENTER**:

>   s/J. RONNIE GREER
>   UNITED STATES DISTRICT JUDGE